Filed 12/16/13  Kronk v. Landwin Group CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| MICHAEL KRONK,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>LANDWIN GROUP LLC et al.,<br><br>    Defendants and Respondents. | B244238<br><br>(Los Angeles County<br>Super. Ct. No. BC470901) |
| MICHAEL KRONK,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>LANDWIN GROUP LLC et al.,<br><br>    Defendants and Respondents. | B244267<br><br>(Los Angeles County<br>Super. Ct. No. BC470904) |

APPEALS from orders of the Superior Court of Los Angeles County, Elihu M. Berle, Judge.  Affirmed.

Law Offices of Andrew M. Wyatt and Andrew M. Wyatt for Plaintiff and Appellant, Michael Kronk.

Quinn Emanuel Urquhart & Sullivan, Richard A. Schirtzer and Molly Stephens for Defendants and Respondents, Landwin Group, LLC, Sylvia, Inc. and Martin Landis.

Stone Cha & Dean, Kristi W. Dean and Amy W. Lewis for Defendant and Respondent, Marshall Reddick.

Sigelman Law Corp. and Paul Sigelman for Defendant and Respondent, Tom Casault.

Law Offices of Stanton Lee Phillips and Stanton Lee Phillips for Defendant and Respondent, Landwin Management LLC.

Law Offices of Stanton Lee Phillips and Stanton Lee Phillips for Defendants and Respondents, Landwin Management, LLC, and Landwin Partners Fund I, LLC.

_____

Michael Kronk purchased one membership unit in Landwin Management, LLC (Landwin Management) in a private offering on March 6, 2005. Kronk purchased a membership unit in Landwin Partners Fund I, LLC (Landwin Fund) in a private offering on February 17, 2007. In October 2011, after unsuccessfully pursuing actions under the federal securities laws relating to the two investments, Kronk filed separate, putative class action lawsuits against Landwin Group, LLC and others involved in the issuance and promotion of the two securities, alleging they had been unlawfully sold by non-registered broker-dealers in violation of Corporations Code section 25501.5.[1] The superior court sustained demurrers without leave to amend and dismissed both lawsuits on the ground they were barred by the statute of limitations. We affirm.

---

[1] Corporations Code section 25501.5, subdivision (a), provides in part, "A person who purchases a security from or sells a security to a broker-dealer that is required to be licensed and has not, at the time of the sale or purchase, applied for and secured from the commissioner a certificate under Part 3 (commencing with Section 25200), that is in effect at the time of the sale or purchase authorizing that broker-dealer to act in that capacity, may bring an action for rescission of the sale or purchase or, if the plaintiff or the defendant no longer owns the security, for damages."

Statutory references are to the Corporations Code unless otherwise indicated.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Landwin Management Investment and the Federal and State Lawsuits*

Landwin Management, a Delaware limited liability company located in Encino, California, was formed in December 2004 to acquire, hold and manage real estate assets. It conducted a private offering of membership units between February and August 2005; the offering raised approximately $13.8 million.

SmithDennison Capital, LLC (SDC) and Sylvia, Inc. advised and managed Landwin Management. According to the offering materials,[2] Landwin Management was to acquire the asset management business from Sylvia, Inc. and certain pools of real estate assets from Landwin Group for $5.8 million in cash and 199 units (valued at $9.95 million) to be issued by Landwin Management at the initial closing. SDC and Sylvia, Inc. were the majority owners and managers of Landwin Group. Martin Landis has an ownership interest in and is the chief executive officer of Sylvia, Inc. Tom Casault and Marshall Reddick were officers of Landwin Group.

Kronk purchased one unit in March 6, 2005 for $50,000 after being introduced to the investment opportunity by Reddick, who also brought the venture to the attention of

---

[2] The superior court granted judicial notice of the private placement memorandum dated February 1, 2005 "because it is a document relied on by Plaintiff in his First Amended Class Action Complaint." The court also took judicial notice of five documents from the related federal securities litigation "because they are the official acts or records of the federal court for the Central District of California." The record does not reflect any objection by Kronk to the Landwin Group's request for judicial notice of this material. (Kronk did object to the request for judicial notice of the two subscription agreements he had signed; the trial court did not judicially notice those documents.) Nonetheless, without specifying which documents or citing any authority to support his argument, in a single sentence in each opening brief Kronk contends the court "took judicial notice of documents [it] should not have done so." Any issue regarding the propriety of judicial notice has been forfeited. (See Cal. Rules of Court, rule 8.204(a)(1)(B) [appellate brief must "[s]tate each point under a separate heading or subheading summarizing the point and support each point by argument and, if possible, by citation of authority"]; *Kaufman v. Goldman* (2011) 195 Cal.App.4th 734, 743 [appellate court may treat as forfeited any argument not "supported by both coherent argument and pertinent legal authority"].)

other investors with whom he had previously dealt through the Marshall Reddick Real Estate Network. In his first amended complaint in Los Angeles Superior Court case No. BC470901 (LASC BC470901), filed April 17, 2012,[3] Kronk alleged he was unaware at that time he was purchasing an unregistered security from unlicensed broker-dealers and contended he did not learn this fact until he was given a copy of the private placement memorandum, dated February 1, 2005, by another investor in October 2008.

The first amended complaint for violation of section 25501.5 and negligent referral, a putative class action filed by Kronk on behalf of himself and all other similarly situated investors who had purchased units in Landwin Management between February 1 and August 15, 2005, named as defendants, among others, Landwin Group, SDC, Sylvia, Inc., Landis, Casault and Reddick. Landwin Management itself was named only as a nominal defendant. In addition to the unlicensed broker-seller claim, Kronk alleged secret and/or illegal commissions were paid to several individuals including Landis, Casault and Reddick. Kronk also alleged Reddick owed the investors who participated in the Marshall Reddick Real Estate Network a duty of reasonable care when recommending they purchase units in Landwin Management and had breached that duty by negligently and unreasonably making false statements regarding the quality of the investment and the good standing of its promoters.

Prior to filing his state court complaint Kronk had sued Landwin Group, SDC, Sylvia, Inc., Landis, Casault and Reddick and various other entities and individuals, as well as Landwin Management as a nominal defendant, in a federal securities class action lawsuit with pendent state law claims. In the federal action Kronk alleged in deciding to invest in Landwin Management he had relied on misrepresentations made at a seminar hosted by Reddick at which Landis and Casault were also present. According to the operative second amended complaint, the defendants had violated federal securities laws by offering for sale unregistered securities through a private offering that did not satisfy the governing regulatory "safe harbor" requirements, and there were material

---

[3] The original complaint was filed October 5, 2011.

misrepresentations and omissions in the PowerPoint presentation made by the president of SDC (Sean Dennison) at the investment seminar. In addition, Kronk alleged the various managers and top officers engaged in a fraudulent scheme to deplete the assets of Landwin Management through high fees and salaries notwithstanding the entity's lack of success and negative cash flow.

The district court granted in substantial part the defendants' motions to dismiss the case in a 22-page order dated June 7, 2011.[4] Initially, the court noted Kronk had alleged for the first time in his second amended complaint that the defendants had failed to provide him with a copy of the private placement memorandum prior to his February 2005 purchase of a Landwin Management unit. However, the court explained, in his first amendment complaint Kronk had alleged the private placement memorandum was materially false and misleading and was an essential link in the accomplishment of the defendants' unlawful scheme. Moreover, Kronk acknowledged in the subscription agreement he signed in connection with the unit's purchase that he had received and read the private placement memorandum; and the PowerPoint presentation attached to the second amended complaint stated investors must receive and read the private placement memorandum. Accordingly, the court ruled, "Mr. Kronk cannot now allege that neither he nor any of the other claim members received the [private placement memorandum] or that it was reasonable for him to rely on statements in the power point presentation without considering the [private placement memorandum]."

The court dismissed the securities fraud claims, finding that Kronk had not adequately alleged an actionable false or misleading misrepresentation or omission by any of the defendants in either the PowerPoint presentation or the private placement memorandum or that his reliance on any of the information in the seminar presentation, rather than the private placement memorandum, was reasonable. Although dismissing all of Kronk's other federal securities claims and most of his related state law claims,

---

[4]     The superior court granted the request to take judicial notice of the district court's orders. See footnote 2, above.

including alleged violations of sections 25501 and 25504, the court ruled Kronk had adequately alleged he purchased his unit of Landwin Management from an unlicensed broker-dealer in violation of section 25501.5. It denied the motion to dismiss as to that cause of action against Landis, Casault, Reddick and two other individuals, but not as to any of the defendant entities; it also denied the motion to dismiss the claim for negligent referral against Reddick. After granting Kronk an opportunity to show cause regarding an appropriate ground for continued federal jurisdiction over the remaining state law claims, on June 27, 2011 the court dismissed those two claims, declining to exercise its supplemental jurisdiction under title 28 United States Code section 1367(c)(3).[5]

2. *The Landwin Fund Investment and the Federal and State Lawsuits*

Landwin Fund, a Delaware limited liability company located in Encino, was formed in March 2006 to engage in real estate and real estate-related investments. Landwin Management was Landwin Fund's asset and property manager, supervising day-to-day operations and selecting its real estate and real-estate related investments. Landwin Group, now the 41.98 percent owner of Landwin Management, was Landwin Fund's "sponsor," assisting with its formation and organization and the development of Landwin Fund's business plan. Landwin Fund conducted a private offering of membership units between January 16, 2006 and May 1, 2007. The offering raised more than $20 million.

Kronk purchased one unit for $50,000 on February 17, 2007. In his first amended complaint in Los Angeles Superior Court case No. BC470904 (LASC BC470904), filed April 17, 2012, which is in substantial part a nearly verbatim copy of the first amended complaint filed in LASC BC470901, Kronk alleged he was unaware he was purchasing an unregistered security from unlicensed broker-dealers at the time of the investment. He again contended he did not learn this fact until he was given a copy of the private

---

[5] The Ninth Circuit affirmed the district court's decision on May 8, 2013 in a nonpublished memorandum decision. (*Kronk v. Landwin Group, LLC* (9th Cir., No. 11-56191) 2013 U.S.App.Lexis 9345.)

placement memorandum, dated May 1, 2006, by another investor in October 2008 (the same investor who was identified in the related complaint as having provided Kronk a copy of the Landwin Management private placement memorandum).

The Landwin Fund first amended complaint for violation of section 25501.5, also a putative class action, named as defendants, among others, Landwin Group, Sylvia, Inc., Landis, Casault and Reddick. Landwin Fund and Landwin Management were both named as nominal defendants. Once again, in addition to the unlicensed broker-dealer claim, Kronk alleged the five partners of Landwin Group (Landis, Casault, Reddick and two others) had received hidden, illegal commissions.

Kronk's state court complaint concerning the Landwin Fund investment was preceded, as was the Landwin Management complaint, by a federal securities class action lawsuit with pendent state law claims. On June 7, 2011—the same day it granted in substantial part the various motions to dismiss the Landwin Management action—the district court in a 21-page order that closely tracks the language in the Landwin Management order granted the defendants' motions to dismiss all federal and state law causes of action in the Landwin Fund lawsuit except for the section 25501.5 claim against the Landwin Group itself.[6] With respect to Kronk's allegation concerning his delayed receipt of the private placement memorandum, the court ruled, "[I]n light of Mr. Kronk's prior allegations in his First Amended complaint [citation], as well as other allegations in the Second Amended Complaint admitting that he previously represented that he had received and read the [private placement memorandum] [citation], Mr. Kronk cannot now allege that neither he nor any of the other class members received the [private placement memorandum] or that it was reasonable for him to rely on statements in the

---

[6]    Unlike the decision in the Landwin Management federal action, in the Landwin Fund action the district court dismissed with prejudice the negligent referral cause of action against Reddick, finding Kronk had not alleged any facts to show that Reddick referred him to this investment opportunity.

The trial court granted the request to take judicial notice of the district court's orders. See footnote 2, above.

power point presentation without considering the [private placement memorandum]." The court thereafter declined to exercise its supplemental jurisdiction over that remaining state law claim.[7]

### 3. *The Demurrers to the State Court Complaints; the Trial Court's Orders*

On May 8, 2012 Landwin Group, Sylvia, Inc. and Landis demurred to the first amended complaint in LASC BC470901 and filed a separate (but basically identical) demurrer to the first amended complaint filed by Kronk in LASC BC470904. Reddick filed his own demurrers to the two pleadings on the same date. Casault and Landwin Management filed joinders in the Landwin Group demurrer in LASC BC470901, and Casault, Landwin Management and Landwin Fund joined the Landwin Group demurrer in LASC BC470904.[8]

The Landwin Group, Sylvia, Inc. and Landis demurrers argued (1) the cause of action for violation of section 25501.5 claim was barred by res judicata as to several of the defendants (Landwin Group and Sylvia, Inc. in LASC BC470901; Sylvia, Inc. and Landis in LASC BC470904) because the federal district court had dismissed that claim with prejudice as to them; (2) the section 25501.5 claim was time-barred under either a one-year or three-year statute of limitations; (3) Landwin Group, Sylvia, Inc. and Landis were not broker-dealers within the meaning of section 25501.5, and Kronk did not purchase his unit from them in any event. Reddick additionally argued that as a licensed real estate broker, he was exempt from the requirement he register as a broker-dealer and, as such, was entitled to recover a finder's fee for his alleged solicitation of Kronk's investment. In addition, because he was not regularly engaged in the business of buying and selling securities, he was also exempted from the definition of broker-dealer.

---

[7]     The Ninth Circuit affirmed the district court's decision on May 8, 2013 in a nonpublished memorandum decision. (*Kronk v. Landwin Group, LLC* (9th Cir., No. 11-56258) 2013 U.S.App.Lexis 9342.)

[8]     Motions to strike certain requests for relief in the first amended complaints and joinders in those motions were also filed. These were ultimately denied as moot by the trial court.

Reddick also argued, as had the other demurring defendants, that Kronk did not purchase his unit directly from him and his section 25501.5 claim was barred by the governing one- or three-year statute of limitations. Finally, he asserted the section 25501.5 claim in the Landwin Fund action was barred by res judicata and collateral estoppel based on the district court's order allowing that claim to proceed only as to Landwin Group. As to the negligent referral cause of action in LASC BC470901, Reddick argued a real estate broker has no duty in making recommendations or referrals with regard to real estate investments and also asserted the negligent referral claim was barred because it was brought more than two years after the claim accrued.

In his opposition papers Kronk argued, in part, a four-year statute of limitations should apply to a section 25501.5 rescission claim and, applying that limitations period and the appropriate doctrines of equitable tolling, his claims were timely in each lawsuit. He conceded he had purchased his units from nominal defendants Landwin Management and Landwin Fund, the issuers of the securities, not any of the defendants identified as unregistered broker-dealers, but insisted in the context of private placements of this type, section 255015.5 properly applied to broker-dealers who controlled the issuers. Kronk also argued the omission of certain of the defendants from the district court's order concluding he had pleaded a viable cause of action under section 25501.5 was not fatal to his state court claim under res judicata or collateral estoppel because the entire claim in each action had been dismissed without prejudice when the court declined to exercise its supplemental jurisdiction.

The court heard arguments on the demurrers in both cases on July 16, 2012. (Apparently no court reporter was present at the hearing, and no reporter's transcript has been prepared as part of either record on appeal.) Based on the allegations in Kronk's first amended class action complaints and judicially noticed documents, the court dismissed the cause of action in each case based on section 25501.5 (sales by unlicensed broker-dealers) as barred by the statute of limitations whether measured by a one- or three-year period (that is, either Code Civ. Proc., §§ 340, subd. (a) [one year for an action

9

upon a statute for a penalty or forfeiture], or 338, subd. (a) [three years for an action upon a liability created by statute other than a penalty or forfeiture].)  The court found the section 25501.5 claim in each case accrued when Kronk purchased his unit from allegedly unlicensed broker-dealers, concluding Kronk was collaterally estopped from contending he did not receive the private placement memorandum until October 2008 by the contrary finding of the federal district court.  The court also sustained the demurrer by Reddick to the negligent referral claim in LASC BC470901 on statute of limitations grounds.

Although no signed dismissal or other appealable order had yet been entered, Kronk filed notices of appeal in each case on September 26, 2012.  (See *Vibert v. Berger* (1966) 64 Cal.2d 65, 67 ["our courts have held it to be 'hornbook law that [an] order sustaining a demurrer is interlocutory, is not appealable, and that the appeal must be taken from the subsequently entered judgment'"]; see generally Code Civ. Proc., § 581d [all dismissals ordered by the court "shall be in the form of a written order signed by the court and filed in the action"].)  However, according to the Los Angeles Superior Court's civil case summary, judgments were entered in LASC BC470901 and LASC BC470904 on November 14, 2012.  Accordingly, pursuant to rule 8.104(d)(1) of the California Rules of Court, we treat the premature notices of appeal as filed immediately after entry of the judgments.

## DISCUSSION

1. *Standard of Review*

A demurrer tests the legal sufficiency of the factual allegations in a complaint. We independently review the superior court's ruling on a demurrer and determine de novo whether the complaint alleges facts sufficient to state a cause of action or discloses a complete defense.  (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415; *Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967.)  We assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded and matters of which judicial notice has been taken.  (*Evans v. City of*

10

*Berkeley* (2006) 38 Cal.4th 1, 20; *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.) We liberally construe the pleading with a view to substantial justice between the parties. (Code Civ. Proc., § 452; *Schifando,* at p. 1081.) We also review de novo issues of statutory construction. (*In re Tobacco II Cases* (2009) 46 Cal.4th 298, 311; *People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432.)

Although a general demurrer does not ordinarily reach affirmative defenses, it "will lie where the complaint 'has included allegations that *clearly* disclose some defense or bar to recovery.'" (*Casterson v. Superior Court* (2002) 101 Cal.App.4th 177, 183; accord, *Holiday Matinee, Inc. v. Rambus, Inc.* (2004) 118 Cal.App.4th 1413, 1421; *Favila v. Katten Muchin Rosenman LLP* (2010) 188 Cal.App.4th 189, 224.) "Thus, a demurrer based on an affirmative defense will be sustained only where the face of the complaint discloses that the action is necessarily barred by the defense." (*Casterson*, at p. 183; accord, *Favila*, at p. 224.)

2. *Kronk's Section 25501.5 Claims Are Barred by the Statute of Limitations*

   a. *Section 25501.5 claims are subject to a three-year limitations period under Code of Civil Procedure section 338, subdivision (a)*

Unlike actions for violations of sections 25500, 25501 and 25502—security transactions involving misrepresentations, material omissions or unlawful use of insider information[9]—the Corporations Code does not specify a limitations period for a rescission action against an unlicensed broker-dealer under section 25501.5. Accordingly, because liability under section 25501.5 for the sale of a security by an unlicensed individual is entirely a creature of statute, an action to enforce that liability is governed by either Code of Civil Procedure sections 338, subdivision (a), which provides for a three-year limitations period for "[a]n action upon a liability created by statute,

---

[9]    Section 25506 provides actions to enforce any liability created under section 25500, 25501 or 25502 (or section 25504 or 25504.1 insofar as they are related to one of those three sections) must be brought "before the expiration of five years after the act or transaction constituting the violation or the expiration of two years after the discovery by the plaintiff of the facts constituting the violation, whichever shall first expire."

other than a penalty or forfeiture," or 340, subdivision (a), which establishes a one-year limitations period for "[a]n action under a statute for a penalty or forfeiture." (See *County Sanitation Dist. v. Superior Court* (1990) 218 Cal.App.3d 98, 106 ["[a]n obligation is 'a liability created by statute' within the meaning of Code of Civil Procedure section 338, '[w]here a statutory scheme has been adopted that gives rise to newly created rights' [citation], if the liability was created by law in the absence of an agreement [citation], or if the duty is fixed by the statute itself"].)[10]

Quoting from *Goehring v. Chapman University* (2004) 121 Cal.App.4th 353, 386-387, which involved an action for the refund of tuition fees from an unaccredited law school that had violated statutory disclosure requirements, Landwin Group argues when, as here, a plaintiff's actual damage is not an element of the cause of action, the claim seeks a penalty. (*Id.* at p. 386 ["""""[t]he California Supreme Court has characterized as a penalty "any law compelling a defendant to pay a plaintiff other than what is necessary to compensate him [or her] for a legal damage done him [or her] by the former"""""]; see also *Hypertouch, Inc. v. ValueClick, Inc.* (2011) 192 Cal.App.4th 805, 843-844 [liquidated damages unrelated to the injury suffered by plaintiff are in the nature of a penalty].) Because the purchaser of a security from an unlicensed broker-dealer is entitled to rescind the transaction without proving any actual damage, Landwin Group

---

[10] Because a claim under section 25501.5 is unquestionably based on a liability created solely by statute, we reject Kronk's argument for application of the four-year limitations period under Code of Civil Procedure section 343, which applies only to actions for which no other limitations period has been specified. Kronk's contention his rescission claim under section 25501.5 is akin to a claim for breach of fiduciary duty, even were it accurate, does not justify use of a four-year limitations period here. (Cf. *Fuller v. First Franklin Financial Corp.* (2013) 216 Cal.App.4th 955, 963 [limitations period for cause of action for breach of fiduciary duty depends on the gravamen of the claim; if deceit, period is three years rather than catchall four-year limitations period]; *William L. Lyon & Associates, Inc. v. Superior Court* (2012) 204 Cal.App.4th 1294, 1313 [breach of fiduciary duty constituting fraud or constructive fraud is subject to a three-year statute of limitations under Code Civ. Proc., § 338].)

12

contends rescission under section 25011.5 is a penalty or forfeiture and the one-year limitations period applies.

Landwin Group's reliance on this limited case law is misplaced. Addressing a restitution claim in a private action brought under the UCL, the Supreme Court in *Clark v. Superior Court* (2010) 50 Cal.4th 605; explained the return of money or property obtained through an improper means to the person from whom the property was taken is "not a punitive remedy": "'The object of restitution is to restore the status quo by *returning to the plaintiff* funds in which he or she has an ownership interest. [Citation.] In contrast, a penalty is a recovery '"without reference to the actual damage sustained."'" (*Id*. at p. 614.) Accordingly, although it may be that in some other circumstances rescission is properly characterized as a penalty, an action under section 25501.5 to rescind an unlawful sale of securities by an unlicensed broker-dealer seeks only to restore the status quo. The three-year limitations period of section 338, subdivision (a), applies.

        b. *The doctrines of equitable tolling, delayed discovery and continuous accrual do not save Kronk's section 25501.5 claims*

Generally, a cause of action accrues "'when, under the substantive law, the wrongful act is done,' or the wrongful result occurs, and the consequent 'liability arises'" (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 397.) Kronk could have filed his claims for rescission under section 25501.5—that is, the causes of action accrued—on the date his investments in Landwin Management (March 6, 2005) and Landwin Fund (February 17, 2007) were complete. (See *Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1191 ["at common law, a 'cause of action accrues "when [it] is complete with all of its elements"—those elements being wrongdoing, harm, and causation'"].) Under this last-element accrual rule the statute of limitations ordinarily runs from "'the occurrence of the last element essential to the cause of action.'" (*Ibid*.; see *Quarry v. Doe I* (2012) 53 Cal.4th 945, 960 ["[a] cause of action accrues, and the limitations period begins to run, when "'the cause of action is complete with all of its elements"'"]; *Pooshs v. Philip Morris USA, Inc.* (2011) 51 Cal.4th 788, 797 ["Generally, a plaintiff must file suit within a designated period after the cause of action accrues.

13

[Citation.] A cause of action accrues 'when [it] is complete with all of its elements . . . .".) Because he did not file his state court actions seeking rescission under section 25501.5 until more than three years after the dates of his investments, Kronk attempts to save his claims by invoking several different doctrines that, where applicable, postpone the normal deadline for filing a cause of action. None is successful.

i. *Equitable tolling*

"The equitable tolling of statutes of limitations is a judicially created, nonstatutory doctrine. [Citations.] It is 'designed to prevent unjust and technical forfeitures of the right to a trial on the merits when the purpose of the statute of limitations—timely notice to the defendant of the plaintiff's claims—has been satisfied.' [Citation.] Where applicable, the doctrine will 'suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness.'" (*McDonald v. Antelope Valley Community College Dist.* (2008) 45 Cal.4th 88, 99.) "Broadly speaking, the doctrine applies '"[w]hen an injured person has several legal remedies and, reasonably and in good faith, pursues one."' [Citations.] Thus, it may apply where one action stands to lessen the harm that is the subject of a potential second action; where administrative remedies must be exhausted before a second action can proceed; or where a first action, embarked upon in good faith, is found to be defective for some reason. [Citation.] [¶] Its application in such circumstances serves 'the need for harmony and the avoidance of chaos in the administration of justice.'" (*Id.* at p. 100.)

Kronk contends the limitations period for his section 25501.5 claims was equitably tolled during the pendency of his federal securities litigation. Yet he did not file the federal lawsuits regarding his two investments until March 1, 2010 (Landwin Management) and March 22, 2010 (Landwin Fund), more than three years after each of the section 25501.5 claims had accrued. Accordingly, even the most generous application of the doctrine of equitable tolling under title 28 United States Code

14

section 1367(d)[11] is insufficient to save his subsequently filed state law claims absent some other basis for delaying the running of the three-year limitations period.

ii. *Delayed discovery*

In addition to the doctrine of equitable tolling, Kronk argues, as he did in the trial court, his claims are timely under the discovery rule, which, where applicable, postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action. (*Aryeh v. Canon Business Solutions, Inc., supra*, 55 Cal.4th at p. 1192; *Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 807.) To benefit from this rule, in paragraph 85 of his first amended complaint in LASC BC470901, Kronk alleged he "was unaware that he was purchasing from unlicensed broker-dealers an unregistered security on March 6, 2005. Plaintiff did not learn of this fact until he was given a copy of the Private Placement Memorandum by another investor, Yusze Yu, in October, 2008." Similarly, in paragraph 57 of the first amended complaint in LASC BC470904, Kronk alleged he "was unaware that he was purchasing from unlicensed broker-dealers an unregistered security on February 17, 2007. Plaintiff did not learn of this fact until he was given a copy of the Private Placement Memorandum by another investor, Yusze Yu, in October 2008."

Standing alone, these allegations might be sufficient to withstand the Landwin Group's demurrers on limitation grounds. (See *Broberg v. The Guardian Life Ins. Co. of America* (2009) 171 Cal.App.4th 912, 921 ["[w]hen a plaintiff reasonably should have

---

[11] Section 1367(d) provides, "The period of limitations for any claim asserted under [the federal court's supplemental jurisdiction] . . . shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period." The Courts of Appeal have disagreed on the proper interpretation of this statute. In *Kolani v. Gluska* (1998) 64 Cal.App.4th 402, 411, this court held a state cause of action filed more than 30 days after dismissal of the related federal action is untimely. In *Bonifield v. County of Nevada* (2001) 94 Cal.App.4th 298, 303-304, the Third District disagreed and held the running of the limitations period is suspended during the pendency of the claim in federal court and for 30 days after its dismissal. In light of our conclusion regarding the proper application of the delayed discovery rule in these cases, we need not attempt to resolve that disagreement.

discovered facts for purposes of the accrual of a cause of action or application of the delayed discovery rule is generally a question of fact, properly decided as a matter of law only if the evidence (or, in this case, the allegations in the complaint and facts properly subject to judicial notice) can support only one reasonable conclusion"].)  The trial court, however, rejected Kronk's allegations of post-investment receipt of the private placement memoranda and, accordingly, of the applicability of the delayed discovery rule.  The court ruled the federal district court had necessarily found Kronk had obtained the documents prior to his investments in Landwin Management and Landwin Fund in its decision dismissing his securities fraud claims and, therefore, Kronk was barred by collateral estoppel from relitigating that factual issue.

California courts properly give preclusive effect to final decisions by federal courts.  (See *Younger v. Jensen* (1980) 26 Cal.3d 397, 411 [a "federal judgment 'has the same effect in the courts of this state as it would have in a federal court'"]; *Johnson v. GlaxoSmithKline, Inc*. (2008) 166 Cal.App.4th 1497, 1508, fn. 6.)  Although Kronk disagreed with the district court's finding, and the propriety of that court's use of judicial notice was apparently an issue in his now-concluded, unsuccessful appeals to the Ninth Circuit, Kronk does not argue the threshold requirements for collateral estoppel were not satisfied in the cases at bar (see, e.g., *Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341 [articulating the five requirements for collateral estoppel to apply]), and does not challenge the trial court's application of the doctrine to conclude he had received the private placement memoranda at the time of his investments in Landwin Management and Landwin Fund.  Instead, Kronk argues, as he did in the trial court, nothing in the private placement memoranda disclosed the defendants were not licensed broker-dealers and there is no language in those documents that would have put him on notice they were not licensed:  "In other words, the PPM is silent as to the status of the named defendants. There was no way for Appellant to know in March 2005 that he was dealing with unlicensed broker-dealers even if true (which it is not), that Appellant received the PPM

16

in March 2005. . . . It was not until after March 1, 2010 that Appellant became aware of this."[12]

In contrast to his current assertion of a belated, March 2010 discovery of the defendant's unlicensed status, however, Kronk alleged in the first amended complaint in each state action that he had learned he purchased unregistered securities from unlicensed broker-dealers when he was given copies of the two private placement memoranda. Although Kronk alleged this occurred in October 2008, rather than at the time of, or immediately preceding, the two investments—the allegations dismissed as not credible by the federal district court—he unequivocally designated the event that provided the requisite knowledge as receipt of the memoranda, not information obtained while working with his attorney after the filing of the federal securities litigation. Kronk's attempt to defeat the demurrers by ignoring that fatal concession and replacing it with the revised chronology he now advances is properly disregarded as a sham: "The well-established rule is that a proposed amendment which contradicts allegations in an earlier pleading will not be allowed in the absence of 'very satisfactory evidence' upon which it is 'clearly shown that the earlier pleading is the result of mistake or inadvertence.'" (*American Advertising & Sales Co. v. Mid-Western Transport* (1984) 152 Cal.App.3d 875, 879; see *Reichert v. General Ins. Co.* (1968) 68 Cal.2d 822, 836 ["'Where a verified complaint contains allegations destructive of a cause of action, the defect cannot be cured in subsequently filed pleadings by simply omitting such allegations without explanation.' [Citations.] 'In such a case the original defect infects the subsequent pleading so as to render it vulnerable to a demurrer.'"]; *Sanai v. Saltz* (2009) 170 Cal.App.4th 746, 768-769].) Whether or not the unregistered status of the named defendants can be determined from the private placement memoranda, Kronk fails to offer any explanation, let alone a

___

[12]    The language quoted is from Kronk's opening brief in B244238, the appeal from LASC BC470901 concerning his investment in Landwin Management. Except for the relevant dates (the investment in Landwin Fund was made in February 2007), the identical language appears in his opening brief in B244267, the appeal from LASC BC470904.

17

compelling one, as to how the harmful facts previously pleaded, which he now contradicts, were the result of mistake or inadvertence.

In sum, the trial court properly concluded that Kronk received the private placement memoranda at the time of his investments and, consistent with the allegations in the first amended complaint, that he learned (or reasonably could have learned) he was purchasing from unlicensed broker-dealers when he was given a copy of those memoranda. Accordingly, the delayed discovery rule has no role in this case.

### iii. *Continuous accrual*

Finally, Kronk also attempts to salvage his section 25501.5 claims under continuing wrong accrual principles, reasoning that his investment decreased in value over time, through at least October 2008. *Aryeh v. Canon Business Solutions, Inc., supra*, 55 Cal.4th 1185, upon which Kronk purports to rely, readily exposes the flaw in this analysis. As the *Aryeh* Court explained, the continuing violation doctrine permits a plaintiff to treat a pattern of reasonably frequent and similar acts as an indivisible course of conduct actionable in its entirety, notwithstanding that the conduct occurred partially outside and partially inside the limitations period. (*Id.* at pp. 1197-1198.) Under the theory of continuous accrual, recurring invasions of the same right can each trigger their own statute of limitations; because each new breach of a continuing or recurring obligation provides all the elements of a claim—wrongdoing, harm and causation—each may be treated as an independently actionable wrong with its own time limit for recovery. (*Id.* at pp. 1198-1199.) Nothing in either operative first amended complaint alleges the factors that would warrant application of these doctrines: Each pleading concerns only a single sale of a security by allegedly unlicensed broker-dealers. The causes of action under section 25501.5 accrued, and the three-year limitations period began to run, at the time of each sale to Kronk.

3. *Kronk's Negligent Referral Claim Against Reddick Is Barred by Code of Civil Procedure Section 339, Subdivision 1's Two-year Limitations Period*

Kronk and Reddick agree Kronk's cause of action for negligent referral alleged in LASC BC470901 is governed by section 339, subdivision 1's two-year limitations

period.  Invoking the delayed discovery rule and doctrine of equitable tolling, Kronk contends the limitations period for this negligence claim did not commence until May 13, 2009 when the managers of the Landwin Management investment notified the investors by email that the estimated value of a membership unit in Landwin Management, originally purchased for $50,000, was only $382 as of April 30, 2009.  Alternatively, he argues the earliest date the limitations period started to run was March 1, 2008 when the investment's managers sent a letter to the investors stating they had all been irreparably harmed by certain actions of Reddick, who had apparently withdrawn from his relationship with Landwin Group and launched a competing business.  Since both of those dates are within two years of the March 1, 2010 filing of the federal lawsuit in which the negligent referral claim was included, Kronk insists the claim is timely.

In his first amended complaint, however, Kronk included a number of additional allegations that compel the conclusion he had reason to suspect he had been harmed by Reddick's malfeasance well before October 2008.  For instance, in paragraph 49 Kronk alleged Landis and Sean Dennison of SDC in an August 2006 letter to investors discussing Landwin Management's activities to date indicated only $2.5 million of the initial capital raised in the private offering had been set aside for direct investment in real estate or related investments—in contrast to the statement in an October 2005 regulatory filing that $5 million would be used to purchase real estate assets.  Moreover, "In this same letter, Plaintiff and the other class members learned for the first time that the entire investment was based on the Company's ability to raise money.  The letter states 'The returns projected in the Private Placement Memorandum ('PPM') of Landwin Management, LLC, last year were based upon the assumption that our company must take under management $20,000,000 in new capital (meaning money invested in our fund entities) each year for the first 4 years of the 10 year life span of Landwin Management, LLC.'"  (Boldface omitted.)  Kronk then alleged, had he known that $20 million of new capital had to be raised each of the first four years of the venture, he would not have invested in the offering.

19

According to the first amended complaint, the August 2006 letter also advised the investors Landwin Management was operating on a negative cash flow while making significant investments in "our human resources, our communications and information management technology infrastructures, and marketing efforts." The negative cash flow, the letter explained, would continue until "sufficient new capital has been taken under our management." Kronk then repeated, had he known this information, he would not have invested in the offering.

As the Supreme Court explained in *Fox v. Ethicon Endo-Surgery, Inc., supra,* 35 Cal.4th at pages 808 to 809, "[A] potential plaintiff who suspects that an injury has been wrongfully caused must conduct a reasonable investigation of all potential causes of that injury. If such an investigation would have disclosed a factual basis for a cause of action, the statute of limitations begins to run on that cause of action when the investigation would have brought such information to light." "[U]nder the delayed discovery rule, a cause of action accrues and the statute of limitations begins to run when the plaintiff has reason to suspect an injury and some wrongful cause, unless the plaintiff pleads and proves that a reasonable investigation at that time would not have revealed a factual basis for that particular cause of action." (*Id*. at p. 803.)

Based on the allegations in the first amended complaint, by August 2006 Kronk unquestionably knew, or at the very least had reason to suspect, his investment in Landwin Management had been procured by misrepresentations or material omissions and Reddick's purported recommendation of that investment was seriously defective. Kronk did not plead—and has never suggested he could allege—that a reasonable investigation at that time would not have revealed additional facts to support his claim for negligent referral. (See *Norgart v. Upjohn Co., supra,* 21 Cal.4th 383 at pp. 397-398 & fn. 2 ["plaintiff discovers the cause of action when he at least suspects a factual basis, as opposed to a legal theory, for its elements"; "'It is irrelevant that the plaintiff is ignorant of . . . the legal theories underlying his cause of action. Thus, if one has suffered appreciable harm and knows or suspects that . . . blundering is its cause, the fact that an

20

attorney has not yet advised him does not postpone commencement of the limitations period'"].)  Accordingly, as the trial court ruled, the two-year limitations period for this claim began no later than August 2006 and had expired well before the filing of the federal litigation.

## DISPOSITION

The orders of dismissal in B244238 (LASC BC470901) and B244267 (LASC BC470904) are affirmed.  Respondents are to recover their costs on appeal.


PERLUSS, P. J.

We concur:


WOODS, J.


SEGAL, J. *

---

*       Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.